The opinion of the Court was delivered by
Wardlaw, J.
The Statute of Frauds, 2 Stat. 525, provides that “ no action shall be brought to charge any person on any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning the same, unless the agreement, or some note or memorandum thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto, by him lawfully authorized.” The question in this case principally argued before us is, whether a house on Sullivan’s Island be an *577 interest in land within the scope of this statutory provision ? And the decision of it requires some summary of the course of legislation concerning this subject. The Acts of the Legislature before 1787, show that the island had been to some extent appropriated to public purposes. 2 Stat. 40, 93, 161, 609. By seventh section of an Act, passed March 28, 1787, 5 Stat. 39, “every grant of land which has been obtained since March 21, 1784, or which may be hereafter obtained, for Sullivan’s Island, &c., or any other lands whatever, which have been or are now appropriated for any particular public purposes, shall be deemed and held null and void.” A joint resolution passed the House of Eepresentatives, January 31, 1791, and the Senate, February 2, 1791, “ That such of the citizens of this State, as may think it beneficial to their health to reside on Sullivan’s Island during the summer season, have liberty to build on the said island a dwelling and out-houses for their accommodation. And the person or persons so building, shall have the exclusive right to the same, and one-half acre of land adjoining thereto, as long as he, she or they may require, for the purposes aforesaid; provided, the person or persons building as aforesaid, pay to the treasurer one penny annually, if required, for the use of the said land; delivering up the same when demanded by the governor or commander-in-chief, for the time being' — -he, she or they having the liberty of removing the buildings which they may erect.” Res. 1791, p. 84; Ord. Moul. p. 4. Some subsequent legislation, provided for the appointment of commissioners to lay out streets; for the sale of the building called the Lazaretto; and assessment on the lots for the purchase or hire of a site elsewhere for such structure, and for the incorporation of Moultrieville, 5 St. 350; 7 St. 113; 8 St. 290, 353, 368; but this legislation did not affect the title to the soil, and it is carefully guarded, that the assessment shall be proportioned to the value of the improvements *578 on the lots, and that the title of the purchasers of the Lazaretto and of buildings sold to pay assessments, shall not be more efficient or durable than that of the present occupants. An Act in 1819, 6 Stat. 131, reciting that “the privilege of occupying the said Island by the citizens, was originally granted by the Legislature, under the proviso, that each citizen taking a lot for himself should actually build thereon,” and that a mere shed or in closure was not an adequate building to carry the privilege, prescribed “that no exclusive right'to a lot on the said island shall be obtained by any citizen, otherwise than by his actually building a dwelling-house thereon: and if such dwelling shall be removed or destroyed, the, owner thereof shall have the exclusive right to rebuild on the same lot for one year thereafter; and if no dwelling-house be built by him within that period, such lot shall again be considered vacant.” These were the enactments of force August 24, 1854, when the contract was made, which is now in litigation. Afterwards, in 1856, 12 Stat. 480, houses and lots on Sullivan’s Island were subjected to taxes to the State at the same rate of taxation as other houses and lots; and in 1857, 12 Stat. 609, it was declared that the tenure of the owners of lots' under the license to build, should be that of tenants from year to year, and it was repeated that the lots should be delivered up whenever demanded by the governor, with liberty to the owners to remove the buildings.
No argument nor commentary can make it plainer than do the words of the Legislature in their fair import, that the occupants of Sullivan’s Island, before 1857, had no interest in the land itself, and were mere tenants at the will of the State. They were proprietors of the houses as chattels, expressly separated from the soil by agreement between them and the State, that they should have the privilege, or liberty, or license, as it is variously described *579 in the Acts, to erect and to remove buildings, and that the State should not part with its title to the soil by grant, the usual mode, (no other mode of divestiture having been prescribed or exercised as to the island,) and might resume the possession whenever its agent should demand. A license by an owner of land to another person to build a house on the land, is not a grant of any right or interest in the land, but is merely a personal privilege which does not extend to the heirs and assigns of such person, and generally may be at any time recalled. Gale & What. on Ease. 21, 31; Wells vs. Bannister, 4 Mass. R. 514; Marcy vs. Darling, 8 Pick. 283; Ashmund vs. Williams, 8 Pick. 402; 10 Pick. 540; 1 Greenl. 117; 4 Jno. R. 418; 9 New II. Rep. 237. If such a license be executed by the erection of the house, and it be stipulated by the parties, as in this case, that the house may be removed by the builder, the house is his personal property. Prince vs. Case, 10 Conn. R. 375, and cases supra. Some contrariety exists in the cases as to timber, growing crops, and other things annexed to the soil, Smith vs. Surman, 9 B. & C. 561; Rodwell vs. Phillips, 9 M. & W. 501; but the better opinion seems to be that contract for the sale of the produce of land or of a structure upon it to be severed from the soil, is a sale of chattels, where the vendee needs only a license to enter and take the subject. 1 Greenl. Ev. 271, and n. 4 and 3. But it is unnecessary to discuss nice distinctions in this case, for it is settled and uncontroverted that a tenancy at will may be created without writing, as not amounting to an interest in land. Co. Litt. 57 a., 62 b.
It is suggested that the State cannot let lands at its will, and that a natural person only can be the landlord in such relation. Neither authority nor principle sustains this distinction. The State, with every body corporate, having complete title to lands, may exercise all the rights of a proprietor, and, in the exercise of such rights, acts *580 as owner merely, and not by virtue of tbe eminent domain wbicb is reserved by implication in every grant of lands. In tbe manifestation of its will as landlord, tbe State should act from motives of public policy and in reference to tbe good of tbe community; and every private landlord should exercise bis will in subordination to honesty, policy and benevolence; but tbe discretion of neither can be regulated by fixed and precise rules.
It is said that tbe stipulation, that tbe tenancy shall be determined whenever the occupant does not rebuild for a year, is in tbe nature of a forfeiture, as for wrongful alienation of a limited estate, or for crime. Without undertaking to determine whether there can be forfeiture, by our law, for such cause, of an estate in fee, absolute or base, and such, according to tbe argument in behalf of defendant, is tbe estate in tbe occupants of tbe island — it is sufficient to say, that, according to our view, tbe estate is held at tbe will of tbe State, and that there is no forfeiture in the case, in any other sense than is applicable to tbe determination of every tenancy at will. Tbe right of the tenants to possession ceases, and the land returns to its previous condition.
Again it is said, that tbe liability of tbe tenants to surrender tbe possession when required by tbe agent of tbe State, is tbe mere expression of that wbicb is implied by universal law, that in time of war,, bouses and lands near a fortress may be seized, if necessary, in tbe exigency of affairs, and that in time of peace private property may be taken for public use. It is true that tbe agent of tbe State named to demand possession is designated by bis full constitutional title of office, governor and commander-in-chief, but this courteous designation is not employed in reference to a state of war, or to bis authority over the militia, and the agency is conferred on him appropriately, as tbe chief executive officer, and is not limited to military *581 exigencies. I suppose that in respect to private estate elsewhere situate, the governor could not take it in time of peace for public use, without express direction from the Legislature or due process of law; but I cannot venture to affirm that he may not determine this special tenancy in the island, whenever, in his discretion, he may demand the possession; the tenants having the liberty of removing the buildings.
In all the documents offered in evidence, the subject of contract is described as a house merely, without intimation of title in the land. It is so called in the caption and body of the advertisement, in the letter from N. B. Mazyck to defendant, and in the letters of defendant, dated August 25, and November 28.
If, then, the parties were right in concluding that a house alone, a chattel, was the subject of contract, the house would pass by mere delivery, unaided by any written muniment; and the circuit Judge properly confined the consideration of the jury to the fact of delivery. His instructions to the jury, detailed in the report, are then unexceptionable, and their finding conclusive. Indeed, if defendant’s letter, written and sent on the day of sale it seems, although bearing date the day after, August 25, 1851, be properly weighed, it can hardly be doubted that he then took possession of the house as owner, discontinuing his possession as tenant.
These remarks dispose of the appeal; and we reserve from judgment the question as to the sufficiency of the memorandum under the statute, if the house be regarded as an interest in land. We say something on the topic, mainly to guard against the inference, that we adjudge the ruling of the Judge on circuit to be right. It is well settled, that it is sufficient if the required memorandum be signed by thé party alone who is to be charged by the action, and that signing by the auctioneer is a signing *582 by one lawfully authorized, as well by the purchaser as the vendor, and that the signing may be in a letter or other separate writing. Gordon vs. Sims, 2 McC. C. 151. Now, here we have a memorandum fully describing the thing to be sold and the terms of sale, and below it, written bjr the auctioneer at the time of sale, the words “E. B. Ehett, $1450,” which, by fair intendment, may denote the purchaser and the price. Then we have the letter of Mr. Ehett, the defendant, written a few hours after the sale, fixing, if it were before doubtful, who was the purchaser, and what was the price. “ I bought to-day the summer-house on Sullivan’s Island. It went off at one thousand four hundred and fifty dollars. If I had not bid,”' &c. ■ Perhaps some departure from the strict requirement of cash, originally proposed, might be deduced, if the letters of N. B. Mazyck and the defendant were collated. In the letter of November 28, 1854, the defendant says: “ I received the title through Mr. Oondy, which I requested you to tender me; and I decline completing the sale of the house which it conveys, for two reasons: 1. The title is not good. 2. If good, I am not bound in law or equity to fulfil the contract of sale made on the 24th of August last;” and he proceeds to argue the two points, without intimating any deficiency in the memorandum. It further appears that he retained the title then received for two years or more, and until the former trial on circuit. It is not easy to point out any important element of the contract which is not proved by the signature of the purchaser, or waived by him. But this is suggestion, and not judgment.
It is ordered that the motions for nonsuit and new trial be dismissed.
O’Neall, C. J., and Johnstone, J., concurred.

Motions dismissed.