SYLVESTER WETKOPSKY *vs.* THE NEW HAVEN GAS
LIGHT COMPANY.

Third Judicial District, Bridgeport, October Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The sale of a building which the parties intend shall at once be torn
down and removed, or removed as a whole, is a sale of personal
property and not "of real estate or any interest" therein, within
the meaning of that expression in the statute of frauds (§ 1089);
and therefore a contract of that nature may be proved by oral
evidence.

Where the intent to sell a building as a chattel is apparent from the
contract and circumstances attending it, there is no reason why a
court should not give effect to the agreement as the parties under-
stood it; for in such case neither of them intends that any interest
in real estate shall pass, and the very purpose of the contract is to
get rid of the building.

In the present case two receipts signed by the owner of the building and
given to the plaintiff, one, dated March 27th, 1912, for $5 "deposit
on house No. 44 Mill St. balance of $35 to be paid on or before
April 1, 1912," and the other, dated later on the same day, for $35
"balance on house No. 44 Mill St.," were offered in evidence as a
sufficient memorandum to satisfy the statute of frauds. *Held*
that the trial court correctly ruled that the receipts did not show
what the contract was which the parties had made, and were
therefore insufficient as a memorandum under the statute.

Argued October 30th, 1913—decided March 5th, 1914.

ACTION to recover damages for an alleged breach of contract, brought to the Superior Court in New Haven County where the plaintiff was nonsuited in a trial to the jury before *Bennett, J.,* from which judgment he appealed. *Error and new trial ordered.*

The complaint alleges that the defendant, on March 27th, 1912, being the owner of a dwelling-house situated at number 44 Mill Street in New Haven, which it desired to dispose of and have removed, sold the same to the plaintiff (who then owned a lot on the opposite side of the street to which he intended to remove it) for a good and valuable consideration then paid; that the defendant had knowledge of the purpose for which the plaintiff purchased the house; and that the defendant afterward refused to permit the plaintiff to remove or take possession of the house, or to deliver the same to him.

The answer denied the allegation that the defendant sold the house to the plaintiff, or had knowledge that he intended to remove it across the street to his lot, admitted that the defendant owned the house and the land upon which it stood, and alleged that, being about to construct a tank upon the lot and it being necessary to the progress of such work that the house should be removed from the lot not later than April 2d, the defendant agreed with the plaintiff on March 27th that for the sum of $40, which was then paid by the plaintiff, he might have the materials of which the house was constructed if he would tear it down and entirely remove the materials from the premises on or before the night of April 2d, and that on the following day the plaintiff repudiated this agreement and told the defendant that he did not intend to tear down the house and would not do so, but intended to remove it in its entirety, and that the defendant thereupon, after the plaintiff had again stated that he would not tear down the house, tendered

him back the $40 and notified him that the agreement was rescinded, and the defendant afterward tore down the house and removed the materials. The reply denied the allegation that there was an agreement to tear down the house.

Upon the trial the plaintiff introduced in evidence two writings which read as follows: "March 27, 1912. Received of Sylvester Wetkopsky five $\frac{5}{100}$ dollars. Deposit on house No. 44 Mill St. Balance of $35.00/100 to be paid on or before April 1/1912. $5 00/100 The New Haven Gas Light Company, per J B B. 3:30 p. m. March 27, 1912. Received of Sylvester Wetkopsky thirty-five $\frac{35}{100}$ dollars. Balance on house No. 44 Mill St. $35 00/100. The New Haven Gas Light Company, J. B. Byrne." The plaintiff also offered to prove by parol evidence the terms of the contract between the parties. This evidence, upon objection that the contract was within the statute of frauds, was excluded. The appeal assigns as error the action of the court in excluding this evidence, in holding that the above writings were not sufficient memoranda to satisfy the statute of frauds, and in holding that the contract alleged was within the statute.

*Samuel A. Persky,* for the appellant (plaintiff).

*Thomas M. Steele,* with whom was *Harrison T. Sheldon,* for the appellee (defendant).

THAYER, J. The only question which has been argued before us in this case is whether, under the allegations of the complaint, the plaintiff could prove a parol contract for the sale of the dwelling-house therein described. The defendant's counsel in their brief have suggested, without seriously urging the matter, that the complaint treats the contract as one of purchase and

sale. We think that it may also be construed as alleging a contract to sell and a breach of the contract by the defendant, the subject-matter being a dwelling-house. The complaint describes the dwelling-house as "situated at number 44 Mill Street," and it appears from the finding that the plaintiff offered evidence tending to prove that it was a two-story, seven room house "on a lot of the defendant" across the street from a lot belonging to the plaintiff. It does not appear, either in allegation or proof, that the house was permanently attached to the realty, or that it was not so detached from it as to be a mere chattel. But it appears from the finding that the trial court, in making its rulings, assumed that the house was attached to the soil, and in this court both parties have argued the case upon the same assumption. We shall assume, therefore, that it was at the time of the alleged contract attached to the real estate in the manner in which such dwelling-houses are ordinarily affixed to the soil, and belonged to the defendant as the owner of the soil.

The plaintiff claims that the sale of a house to be immediately removed from the land on which it stands and to which it is affixed is a sale of personal property and not of an interest in real estate, and so is not within the section of the statute of frauds which prevents the maintenance of an action upon agreements for the sale of real estate unless the same shall be in writing.

Browne, in his first edition, after reviewing the early cases relating to this section of the statute as bearing upon sales of fixtures, buildings, standing trees, growing crops, etc., attached to the soil, drew therefrom the general rule that "if the contract when executed is to convey to the purchaser a mere chattel, though it may be in the *interim* a part of the realty, it is not affected by the statute." Browne on Statute of Frauds (1st Ed.) § 249. Benjamin, after quoting with approval the

language of Lord Blackburn (from his work on Sales), lays down the rule that "an agreement to transfer the property in anything attached to the soil at the time of the agreement but which is to be severed from the soil and converted into goods *before* the property is transferred to the purchaser is an agreement for the sale of goods, an executory agreement." 1 Benjamin on Sales, § 133. Williston says: "If the contract is to sell and deliver a house, even though the house is at the time affixed to the realty, it is a contract for the sale of goods, for the parties contract to buy and sell a house separated from the realty and moved from its foundations. On the other hand if the parties attempt to make a present transfer of a building or materials fixed in a building, it is evident that they are attempting to make a sale of realty, even though it is also agreed that the subject-matter of the sale shall be severed in a short time." Williston on Sales, § 66. The Supreme Judicial Court of Massachusetts, speaking in a case where the contract related to growing trees, said: "It may be difficult in many cases to determine, from the terms of the contract, whether the parties intend to grant a present estate in the trees while growing, or only a right, either definite or unlimited as to time, to enter and cut, with title to the property when it becomes a chattel. If the former be the true construction, then it comes within the statute, and must be in writing; if the latter, then, though wholly oral, it may be enforced." *White* v. *Foster*, 102 Mass. 375, 378. There is great conflict in the decisions, but this is the rule in England and in many of our sister States. *Shaw* v. *Carbrey*, 95 Mass. (13 Allen) 462; *Douglas* v. *Shumway*, 79 Mass. (13 Gray) 498, 502; *Claflin* v. *Carpenter*, 45 Mass. (4 Met.) 580, 583; *Erskine* v. *Plummer*, 7 Me. 447, 451; *Davis* v. *Emery*, 61 Me. 140, 142; *Banton* v. *Shorey*, 77 Me. 48, 51; *Fish* v. *Capwell*, 18 R. I. 667, 670, 29 Atl.

840; *Sterling* v. *Baldwin*, 42 Vt. 306, 311; *Foster* v. *Mabe*, 4 Ala. 402; *Byassee* v. *Reese*, 4 Met. (Ky.) 372; *Leonard* v. *Medford*, 85 Md. 666, 37 Atl. 365; *Long* v. *White*, 42 Ohio St. 59, 60; *Slocum* v. *Seymour*, 36 N. J. L. 138, 139, 141. This is the rule early adopted in this State. *Bostwick* v. *Leach*, 3 Day, 476, 484. We think, notwithstanding the numerous opposing authorities, that this is the better rule.

Counsel for the defendant attempted to distinguish cases of contract to sell mill-stones or other fixtures attached to the realty and belonging to the owner thereof, as was the case in *Bostwick* v. *Leach*, or a case of contract to sell the boards and brick of which a building is composed, where the vendee is to remove the mill-stones in the one case and to tear down the building and remove the materials of which it is constructed in the other, from a contract to sell an entire building to be severed and removed by the vendee. We see no difference in principle between the cases. The brick and materials of which a building is composed are, before the destruction of the building, a part of the realty as much as the entire building is before its severance; indeed they constitute the building. If a vendor contracts to sell a building entire, or to sell the materials of which it is composed, and to sever the building from the land, or tear it down and deliver the materials, it will hardly be claimed that in either case a sale of land or any interest therein is contemplated, or that an action could not be maintained for a breach of the contract; because the intent of the parties in either case to contract with respect to a mere chattel is apparent. Where the intent to sell a building as a chattel is thus apparent from the contract and circumstances attending it, the severance may be made by the vendee. *Marshall* v. *Green*, L. R. 1 C. P. Div. 35, 40. The fact that the vendee is to remove the building is important

only as bearing upon the intent of the parties in determining whether the title to the building is to pass at once or only after severance from the realty. When the parties to the contract have in contemplation the sale of a building or a tree as a chattel when it shall be detached from the land, there is no good reason why a court should not give effect to the contract as the parties understood and intended it. In such a case neither party intends that any interest in the real estate shall pass. The very purpose of the contract may be to rid the land of such tree or building. Until detached from the land the thing contracted to be sold would remain a part of the realty, and a conveyance of the realty to a third party would carry it to the purchaser. The implied license to enter and sever the chattel, if this was to be done by the vendee, would be revoked by such conveyance of the land, and the vendee's remedy must be against the vendor for breach of the contract. Growing crops, *fructus industriales,* are an exception to the rule, and may be sold and the title pass to the purchaser before severance from the soil.

In the case before us the complaint alleges that the defendant owned the dwelling-house in question, which it desired to have removed from its lot, and that the plaintiff purchased it with the purpose of removing it across the street to his own lot. The defendant denies this, and by the answer alleges that the contract was that for the $40 paid the plaintiff was to have the materials of which the house was constructed if he would tear down the house and entirely remove the materials. This is denied in the reply. As already intimated, we think that the allegations of the complaint are sufficient to permit proof of an executory contract for the sale of the house as well as a contract of bargain and sale. The parties were at issue as to what the contract was, the plaintiff claiming that it was for the sale of the

house severed from the land, the defendant that it was for the sale of the materials of which the house was constructed if the plaintiff would tear it down and remove them.

The two receipts which were in evidence were not sufficient memoranda of any contract to satisfy the statute. They did not show any sale, present or prospective, of the house, and would apply as well to money received on a lease as on a sale of the house. But the plaintiff was entitled to show that the contract was as he claimed, for the sale of the house as a chattel after severance from the soil, and there was error in excluding the evidence offered for this purpose.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.