[No. 16239.   Department One.   April 21, 1921.]

## In the Matter of the Estate of J. T. Bloor.[1]

FRAUDS, STATUTE OF (9)—ORAL AGREEMENT FOR BUILDING. The sale of a small house, erected and used as a temporary dwelling place, with an understanding between the parties that the purchaser had the right to remove it, is not such a contract as the statute of frauds requires to be evidenced in writing.

SAME (9). Where a widow, in possession of a farm pending settlement of her husband's estate, built a root house on the land for her own convenience, she was entitled to remove it on the assignment of the land to other heirs.

MACKINTOSH and HOLCOMB, JJ., dissent.

Appeal from an order of the superior court for San Juan county, Hardin, J., entered August 3, 1920, granting a final discharge to the administratrix of an estate, over the objection of certain heirs. Affirmed.

*Ernest B. Herald,* for appellants.

*Geo. A. Joiner,* for respondents.

BRIDGES, J.—In September, 1916, J. T. Bloor died, leaving surviving him a widow and several children. The larger portion of the property was a farm, which was about evenly divided as to value into two parts, by a certain ravine running through it. This property was the community property of Mr. Bloor and his wife. Mrs. Bloor was appointed and qualified as administratrix of the estate. In due course she made her final report, wherein she showed that the estate was ready to be closed upon certain expenses of administration being paid and certain divisions of the property being made. She called attention to the fact that the ravine divided the farm and that she, as the widow, was willing to take either side of the ravine, the other heirs choosing which side they would take. A division of

[1]Reported in 197 Pac. 614.

the property was thus agreed upon, and the court made a decree so dividing it.

It appears that, on the hearing of this final decree, some objections were raised by the children because the administratrix was at that time removing or permitting to be removed from that portion of the land which was being awarded to the children, a certain small house and also a root house and a small quantity of lumber, the total value of all of which was probably from $600 to $700. Later the administratrix surrendered possession of the land which was given to the children, and made application to the court for her final discharge. Formal objections were made to the discharge because the administratrix had removed, or permitted to be removed, from the premises the house and other property above mentioned. After a hearing on this controversy, the court decided that the administratrix had performed her duty and discharged her and her bondsmen. The children have appealed.

A number of questions have been raised but we do not find it necessary to consider more than one or two of them. A history of this little dwelling and the root house and lumber in controversy, we are satisfied from a reading of the record, is as follows: About 1907, Mr. Bloor and his wife rented for one season their farm and were required to move out of their regular dwelling. At about that time, they built the small house in controversy here, apparently to be used by them as a temporary dwelling. The house was about 16x22 feet and was largely incomplete, and while the Bloors may have lived in it a little while, it was not very long. This small dwelling was, at least in part, located on the public road. Prior to this time, one Charles Lee, a young man, lived with the Bloors and assisted them with the farming. Lee and the Bloors

became very much attached to one another. Later Lee purchased this small house, paying therefor some eighty dollars in labor. It was distinctly understood between him and the Bloors that the house henceforth belonged to him. Sometime thereafter Lee married and the small house was removed and placed on the Bloor land near the regular residence. At that time Lee contemplated purchasing a ten acre tract of land adjoining the Bloor land, and he intended to move the little house on his own land, as soon as he could slash it and clear some of it. After the removal of the small house, Lee and his wife lived there for some while, and on a number of occasions the Bloors recognized the house as belonging to Lee. Before the latter had cleared any of his ten acre tract and moved his house thereon, he was called into service in the world war and the house was not moved to Lee's ten acre tract.

Mrs. Bloor never claimed any ownership or interest in this house, individually or as administratrix of the estate of Mr. Bloor. The place to which the house had been originally removed was on that portion of the farm which had been awarded to the appellants. About the time of the hearing on the administratrix's final report, Lee caused the house to be removed from that land. While the administratrix probably did not have any active connection with the removal, she had knowledge of it, and it was done probably with her consent, at any rate without any objections from her.

There is considerable testimony tending to indicate that, when the appellants agreed to take their one-half of the farm, they knew that this house belonged to Lee and that he had removed it, but there is much contradiction of this statement. It is probably immaterial, in any event. Under these facts, the house unquestionably belonged to Lee, who had the right to remove it,

unless the statute of frauds stands in the way. The Bloors had never given any deed, bill of sale or other writing concerning the house. We are satisfied, however, that the statute of frauds is not applicable to a situation of this character. In the first place, if the house was located on the road and not on the Bloor land when it was bought by Lee, it is certain that the statute of frauds would not apply and that Lee would, under those circumstances, become the absolute owner of the house; but even if it be conceded that when Lee bought the dwelling it was located on the Bloor land, yet it has generally been held that a verbal sale of property of this character amounts to a severance of the property sold from the real estate; and particularly is this true, if, after the sale is made, the purchaser removes the house, or if it is understood at the time of the sale that the house is to be removed. At page 538 of 25 R. C. L. it is said:

"Though improvements erected on land constitute a part of the realty so as to pass by a conveyance of the land itself, there may be a constructive severance and conversion into personalty of what would ordinarily constitute a permanent fixture. It is therefore the general rule that a contract by the owner of land for the sale of fixtures and improvements thereon including buildings, the same to be removed by the buyer, is not a contract for the sale of an interest in the land; and no distinction is to be made in such a case between a contract contemplating the tearing down of the building sold and one contemplating the removal of the building as a whole. The rule in this respect has been thus stated: When there is a sale of property which would pass by a deed of land as such, without any other description, if it can be separated from the freehold, and by the contract is to be so separated, such contract is not within the statute. If a building may be made personal property by an agreement entered into previous to its erection, it is difficult to

see why the same character may not be impressed on it by a subsequent agreement making a sale of it and granting a right of removal.''

See, also, *Godeffroy v. Caldwell,* 2 Cal. 489, 56 Am. Dec. 360; *Russell v. Meyer,* 7 N. D. 335, 75 N. W. 262, 47 L. R. A. 637; *Long v. White,* 42 Ohio St. 59; *Wetkopsky v. New Haven Gas Light Co.,* 88 Conn. 1, 90 Atl. 30, Ann. Cas. 1916D 968; *Rogers v. Cox,* 96 Ind. 157, 49 Am. St. 152.

Under all the circumstances of this case, we are convinced that this building belonged to Lee, and that he had a right to remove it.

As to the lumber taken by the widow, there is ample testimony to show that she acquired it after the death of her husband and that it was her property, and that she had a right to remove it. As to the root house, there is testimony to show that the court gave the widow the possession of the farm pending the settlement of the estate, and that it was during this period that the root house was built by her for her own convenience. Under these circumstances the property belonged to her and she had a right to remove it.

The judgment is affirmed.

PARKER, C. J., and FULLERTON, J., concur.

MACKINTOSH and HOLCOMB, JJ., dissent.