44 So.2d 417 (1950)
STILES
v.
GORDON LAND CO.
Supreme Court of Florida, Division B.
February 21, 1950.
Ausley, Collins, & Truett, Tallahassee, for appellant.
H.P. Sapp, Panama City, for appellee.
SEBRING, Justice.
The appeal is from an adverse decree against the plaintiff in a declaratory judgment suit. The following facts pertinent to the appeal appear in the record:
*418 At the beginning of World War II the Federal Government established a large army camp in Leon, Wakulla and Franklin Counties, Florida, named Camp Gordon Johnston. After the conclusion of hostilities the camp was deactivated and the properties, including the buildings, equipment and improvements thereon, were declared by the Federal Government to be surplus and were placed on the market for sale. The properties were purchased from the Government by Gordon Land Company. Subsequently Gordon Land Company engaged Messrs. Fletcher and Boniske to act as their agents and sales representatives in salvaging the buildings, comprising more than 1,000 temporary barracks, by offering them for sale to the general public, the buildings when sold to be removed from the premises.
To expedite the sales an office of the Gordon Land Company was opened at Camp Gordon Johnston. In this office was a representative of the Gordon Land Company and also one Leon Shapiro who, according to the testimony of Boniske, was hired by Fletcher and Boniske "as a clerk and more or less as a guide." Sales of all barrack buildings purchased by the public were "consummated at the office under the name of the Gordon Land Company, with no particular person to say `I sold this building or that building'". When not otherwise occupied, Shapiro was authorized "to show prospects various properties." When barrack buildings were sold deeds were never given to the purchasers, but receipts were frequently given to evidence the fact of purchase.
On February 15, 1949 the plaintiff Stiles went to the office of the Gordon Land Company at Camp Gordon Johnston to purchase one or more barrack buildings. He found occupying the office a woman employed by Gordon Land Company and Leon Shapiro who was apparently in charge of sales operations. After Stiles had stated the purpose of his visit Shapiro showed Stiles a building on the premises, which was priced by Shapiro at $300. Stiles purchased the building at the price stated, giving to the woman his check payable to Gordon Land Company in the sum of $300 and receiving from her an invoice or bill of sale evidencing the purchase. The check was cashed in due course and the proceeds were retained by Gordon Land Company as payment for the building purchased.
A few days subsequent to this transaction Stiles again returned to Camp Gordon Johnston with a crew of men who dismantled and removed the building from the premises. On that occasion Shapiro offered to sell to Stiles for the sum of $750 a wooden building on the premises designated as Building T-417 and known as the Headquarters Building. Stiles accepted the offer and gave Shapiro his check in the sum of $750 payable to Gordon Land Company. Upon the consummation of the transaction, some one in the office  Stiles does not remember whether it was Shapiro or the woman employee  gave to Stiles a receipt written on the billhead of Gordon Land Company, which contained the wording: "February 21, 1949  Sold to: J.A. Stiles, % Cherokee Hotel, Address: Tallahassee, Fla.  Building # T-417 (Headquarters Bldg.) $750.00  Paid by check  Goods Received in Good Order  Purchaser Sign Here." The check given by Stiles to Shapiro was subsequently cashed and the proceeds were deposited to the account of Gordon Land Company.
Several days after this transaction, but before Stiles had removed the building from the premises, a letter dated February 26, 1949 and written on the letterhead of Gordon Land Company was received by Stiles in due course of mail. This letter read, in part, as follows:
"Dear Mr. Stiles:
"Due to a previous committment made by Mr. A.M. Lewis, Sr., President of the Gordon Land Company, of which our office at Camp Gordon Johnston had no knowledge, we cannot deliver Building # T-417 (Headquarters Bldg.). We are therefore returning two checks totaling $750.00, the amount which you have given us.
*419 "We trust that we have not in-convenienced you.
 "Yours very truly,
 Gordon Land Company
 By Leon Shapiro (signed)
"LS/jc
CC: Mr. A.M. Lewis, Sr.,
 Panama City, Fla."
Enclosed in this letter were two checks dated February 25, 1949, in the aggregate amount of $750, which were drawn on the account of Gordon Land Company in the Commercial Bank of Panama City, Florida, and were signed "Gordon Land Company" by A.M. Lewis and H.M. Lewis, the president and vice-president, respectively, of the defendant corporation.
Upon receipt of the letter, Stiles immediately went to Camp Gordon Johnston, taking his dismantling and wrecking crew with him. When he arrived there he was met by one McClary, an employee of Gordon Land Company, who informed him that as the result of orders received by him from the president of the corporation, he, Stiles, was not to be permitted to remove the building from the premises. After a sharp exchange of words between Stiles and McClary, Stiles returned the check he had received from Gordon Land Company and was permitted by McClary to go on the premises (contrary to the orders McClary had received from his superior, so McClary testified), and to begin dismantling the building preparatory to its removal. Subsequently, on March 1, 1949, after some windows and doors had been removed from the framing but before any large amount of materials had been taken from the premises, Stiles received another letter from Gordon Land Company, which was worded as follows:
"Dear Mr. Stiles:
"I was indeed surprised to find upon arriving at Camp Gordon Johnston today that your men had entered upon our premises and caused serious damage to one of our buildings.
"I instructed you over the telephone on Monday, February 28th that you were under no circumstances to allow your men to disturb any of our property and that the Gordon Land Company would hold you responsible for any damage incurred.
"I would like to remind you that on February 26th, the Gordon Land Company returned to you $750.00, which was purportedly the purchase price for a building described as # T-417.
"We felt that any obligation that we might have had to you ceased to exist upon the return of your money.
"I would like to point out that Mr. Leon Shapiro, with whom you had the transaction is no employee of the Gordon Land Company and does not in any way represent us.
"You are hereby notified not to enter upon our premises under any conditions or circumstances in the future, and as soon as we have determined the extent of damage you have done to our building, we are billing you for same.
"It is unfortunate that this misunderstanding occurred especially since we have had a very long and pleasant association with the Stiles.
 "Very truly yours,
 Gordon Land Company
 H.M. Lewis, Vice President
"P.S. We are holding our refund checks that were mailed to you and you returned to this office, as damage to our building. "HML/jc
cc: Mr. Abe Fletcher, Jacksonville."
Immediately after the receipt of this letter Stiles instituted the present suit, setting out the salient facts which we have narrated and praying that the court enter its decree declaring him to be the owner of the building and entitled to the possession thereof; that the defendant be enjoined from disposing of the building pending the suit; that the plaintiff be permitted to remove the building from the premises; and that the plaintiff be awarded damages, costs and expenses reasonably incurred as the result of the defendant's wrongful acts.
An answer was filed by the defendant admitting the acquisition of the property from the Federal Government, and alleging that the defendant's sole and exclusive agents for the sale and disposition of the *420 buildings on the property were Fletcher and Boniske; that Leon Shapiro was an employee of Fletcher and Boniske and was not and never had been employed or authorized by the defendant to sell any of the buildings on the premises. In a cross-bill filed with the answer, the defendant prayed that the court declare the defendant to be the sole owner of the building in dispute; that the property of the defendant be quieted as against the claim of the plaintiff; and that the court assess damages against the plaintiff for his wrongful intrusion on the premises.
Evidence was adduced on the issues and at final hearing the chancellor entered a decree finding that the building in dispute was "real property with the fee thereof vested in the defendant"; that its ownership, use, possession and enjoyment should be forever quieted and confirmed in the defendant; that the plaintiff had been guilty of wrongfully entering upon the premises and injuring the building to the damage of the defendant, for which the latter was entitled to damages; and that the question of the amount of damages should be submitted to a jury to determine the issue: "What, if any, is the difference between the value of the building of the Gordon Land Company designated as N. T-417, Headquarters Building, immediately before and immediately after the action of J.A. Stiles, his servants, agents, or employees, with respect to said building on February 28, March 1st and 2nd, 1949"?
The present appeal is from the decree.
The first contention made by the appellant is that the chancellor erred, under the facts disclosed by the record, in decreeing that the building in dispute "was real property with the fee thereof vested in the defendant; that its ownership, use, possession and enjoyment should be forever quieted and confirmed in the defendant."
With respect to this issue, our study of the authorities leads us to the conclusion that though it is a general rule of law that buildings and fixtures actually or constructively annexed to realty will be presumed to have become a part of the realty and to have inured to the benefit of those who may be entitled to the freehold interest, Burbridge v. Therrell, 110 Fla. 6, 148 So. 204, this rule is subject to the principle that where the owner of the freehold contracts to sell and deliver a building situate thereon to be removed and located elsewhere the contract will be held to be one for the sale of goods, even though the building is at the time affixed to the realty; the basis of the principle being that whereas the parties have expressed the intention by their contract to buy and sell a building separate from the realty and moved from its foundations, not an intention to buy and sell the building coupled with the real property interest, the courts will give effect to the intention. See Benjamin on Sales, Vol. 1, Sec. 133; Williston on Sales, Rev.Ed., Sec. 66, p. 163; Restatement of the Law of Contracts, p. 268, Sec. 200(c); 22 Am.Jur. 727, Fixtures, Sec. 14.
As is stated in Robnolte v. Kohart, 81 Ohio App. 1, 76 N.E.2d 913, 915, "Agreements for the sale of buildings already erected upon land rest in part, if not altogether, upon the individual facts. Courts have consistently held that the sale of houses, buildings, etc., to be removed from the premises does not involve a contract within the statute of frauds, because the buildings become personal property by intention of the parties as soon as the sale is made, for the reason that the sale itself operates as a severance from the land, which makes the agreement collateral to the land and passes no interest therein. It has been emphasized frequently by the courts that if the agreement of the parties contemplated an outright severance from the land, the agreement itself, in purview of the statute of frauds, was as effective as a physical severance. 49 Am.Jur., 499, Statute of Frauds, Section 163."
To like effect is the statement of the principle in Wetopsky v. New Haven Gas Light Company, 88 Conn. 1, 90 A. 30, 32, Ann.Cas. 1916D, 968, wherein it is said: "Where the intent to sell a building as a chattel is thus apparent from the contract and circumstances attending it, the severance may be made by the vendee"; and in Rogers v. Cox, 96 Ind. 157, 49 Am.Rep. 152, wherein it was held: "Where the owner *421 sells a building with the right of removal, he severs it from the land, and gives it the character of personalty." See also Long v. White, 42 Ohio St. 59; Whetmore v. Rhett, 12 Rich. 565, 46 S.C.L. 565; In re Bloor's Estate, 115 Wash. 507, 197 P. 614; Bowman v. Union Trust Co. of San Diego, 41 Cal. App.2d 397, 106 P.2d 913.
In our view the evidence in the record can admit of no conclusion other than that the intention of the defendant company was to treat such buildings as it sold to the general public as personal in character. The defendant bought the property with the temporary buildings thereon as war surplus. After the acquisition of the property the defendant began salvaging the buildings by offering them for sale to the general public. In all the many sales of buildings that were made no deeds were given (as would have been required to pass an interest in realty) and as to every transaction with purchasers, it was contemplated by the contracting parties that upon the closing of any deal the buildings would be removed from the premises and that the sale should not include any interest in the realty. We think these facts and circumstances surrounding the method by which the defendant was disposing of these buildings clearly established its intentions that with respect to persons who lawfully became purchasers of the buildings the buildings so purchased should be treated as personalty.
Having reached this conclusion, our next concern is with respect to the question of the authority of Shapiro to sell the Headquarters Building to the plaintiff. It is contended by the defendant that Shapiro was not an employee of the defendant but was an employee of Fletcher and Boniske, the agents and representatives of the Gordon Land Company in the sale of buildings; that Fletcher and Boniske were not empowered to sell the particular building in question, without the express consent of the defendant; and that he, Shapiro, had no authority to handle sales of buildings of any nature whatsoever in any event.
The contention of the defendant that Shapiro did not have real authority from Gordon Land Company to sell any building situate on the premises is hardly convincing when viewed in the light of testimony given by H.M. Lewis, the vice president of the Gordon Land Company, with respect to the manner in which sales were consummated, who testified: "They would bring them [persons desiring to purchase] back to the office where Mr. Mizell or Mr. McClary, or Shapiro would close the deal if it conforms with our contract and the way we operated;" and who also testified with respect to a telephone conversation had with Shapiro at the time the latter was negotiating with Stiles for the sale of the Headquarters Building: "Mr. Shapiro told me over the telephone that he thought he had a prospect for a building belonging to the Gordon Land Company on the restricted list and which had not been previously offered for sale, and he would like to know what our attitude would be in selling this particular building. I don't know whether he designated it by number or not, but did say that it was the officers' quarters building, or it could be that he said headquarters building. * * * I assumed from my conversation that the building in question was a building we had converted into a show room, known as the officers' quarters officially in the camp, and I told him that as far as the Gordon Land Company was concerned, if that was the building he could enter into negotiations with this prospect. * * *"
But be that as it may be, the fact, if it be a fact, that Shapiro did not have real authority from Gordon Land Company to sell any of its buildings, and particularly the building in dispute, would not necessarily be conclusive of the issue before us for determination. The authority of an agent to bind a principal may be real or it may be apparent only, and members of the public acting in good faith may rely on either, unless in the case of apparent authority the circumstances are such as to put a reasonable person on inquiry. Tomkin Corp. v. Miller, 156 Fla. 388, 24 So.2d 48. By apparent authority is meant, such authority as the principal wrongfully permits the agent to assume or which the principal by his actions or words holds the agent out as possessing. See Aetna Ins. *422 Co. v. Holmes, 59 Fla. 116, 52 So. 801; Hartford Fire Ins. Co. v. Brown, 60 Fla. 83, 53 So. 838. Apparent authority rests on the doctrine of estoppel and arises from the fact of representations or actions by the principal and a change of position by a third person who in good faith relies on such representations or actions.
It is plain that whatever may have been the exact legal relationship between Shapiro and Fletcher and Boniske, on the one hand, and Shapiro and Gordon Land Company on the other, Shapiro was permitted to occupy the office from which Gordon Land Company made its sales, and to show prospective purchasers various properties. He was permitted to close deals for and on behalf of Gordon Land Company if, as the vice president of the corporation stated, the deals conformed with the general contract between Fletcher and Boniske and Gordon Land Company and the manner in which the Gordon Land Company operated.
When Stiles went to the office from which Gordan Land Company was offering buildings for sale to be removed from the premises he found Shapiro apparently in charge of sales transactions. There was nothing in the appearance of things to put Stiles on notice that Shapiro did not have complete authority, or had at most only limited authority, to sell buildings situated on the premises. Shapiro showed Stiles a building, named a purchase price to which Stiles agreed, and a bill of sale to the building was given by an employee of Gordon Land Company who was then in the office. Thereafter, Stiles was permitted to remove the building from the property and Gordon Land Company retained the proceeds of the sale. Upon a subsequent visit to the office of Gordon Land Company, Stiles was shown another building by Shapiro. After an inspection of the building a telephone conversation was had between Shapiro and H.M. Lewis, the vice president of the corporation, in which the latter authorized Shapiro to negotiate a sale of the building. At the conclusion of the telephone conversation Shapiro placed a price of $750 on the building, which was agreed to by Stiles. The fact that Lewis may have been mistaken in the building to which Shapiro was referring in his telephone conversation would not, in our opinion, be decisive on the issue of the presence or lack of apparent authority which plaintiff was entitled to rely on in his dealings at the Gordon Land Company office. Upon the acceptance of the offer to sell, Stiles tendered his check payable to the Gordon Land Company in the sum of $750. In return, a bill of sale was given Stiles on a Gordan Land Company invoice and subsequently the proceeds of the check were credited to the account of the defendant corporation. When, subsequently, Gordon Land Company attempted to repudiate the sale, by its letter of February 26, 1949, the letter was signed by Shapiro acting for and on behalf of Gordon Land Company, and the repudiation was based, not upon any lack of authority in Shapiro to negotiate the sale in the first instance, but upon the ground that "a previous commitment" to sell the building had purportedly been made by A.M. Lewis, Sr. the president of the defendant corporation. The checks of the Gordon Land Company which were enclosed in the letter were signed by the president and the vice-president of the Gordon Land Company for forwarding to Stiles, and hence the officers of the corporation are hardly in a position to say that they did not at least impliedly authorize Shapiro to act for the corporation in respect to writing and mailing the letter and to base the corporation's attempted repudiation of the sale upon the ground of "a previous commitment"  a ground entirely consistent with the presence of general authority in Shapiro to sell the building except for the existence of such previous commitment. The evidence reveals, incidentally, that no previous commitment to sell the building had in fact been made.
From these salient facts, it is our conclusion that whatever may have been the real authority of Shapiro with respect to the sale of temporary buildings on the Camp Gordon Johnston properties for removal from the premises, he had, so far as Stiles was concerned, at least, apparent authority to make a sale of the temporary structure in question. When the plaintiff in good faith paid the price asked for *423 the building and Gordon Land Company gave its invoice and credited the amount of the proceeds to its account, the building became severed from the realty, as a matter of law, and thereafter, as between the parties, became subject to the rules applicable to personal property.
It follows from the conclusion reached that the plaintiff has a complete property interest in the building, coupled with the right to remove it from the premises, and that the decree appealed from should be reversed with directions that a decree be entered in favor of the plaintiff in conformance with this opinion and judgment.
It is so ordered.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur.