715 So.2d 973 (1998)
SECURITY UNION TITLE INSURANCE COMPANY, formerly known as Safeco Title Insurance Company, Appellant,
v.
CITIBANK (FLORIDA), N.A., as successor to the Federal Deposit Insurance Corporation as liquidator of Caribank, a Florida Banking Association, Appellee.
No. 97-841.
District Court of Appeal of Florida, First District.
June 10, 1998.
Rehearing Denied August 25, 1998.
John Beranek, of Ausley & McMullen, Tallahassee; Christine Rieger Milton, of Mahoney, Adams & Criser, Jacksonville; and James V. Lau, of Lau, Lane, Pieper, Conley & McCreadie, Tampa, for Appellant.
Waddell A. Wallace, III and James H. Post, of Smith, Hulsey & Busey, Jacksonville, for Appellee.
*974 Lee Huszagh, Tallahassee, Amicus Curiae for American Land Title Association and Florida Land Title Association.
MINER, Judge.
Raising several issues, appellant (Safeco) seeks review of a multi-million dollar judgment based on an adverse jury verdict. Because we conclude that Safeco was entitled to a directed verdict below on the issue of its vicarious liability for fraud committed by its agent, we reverse and remand for further consistent proceedings. In view of this disposition, we find it unnecessary to reach the other points on appeal.
The facts of this case involve relatively tangled financial transactions and need not be recited here in exhaustive detail. It is enough to say that Safeco (defendant below) was found by a jury to be vicariously liable solely on the basis of the conduct of an attorney who was its agent authorized to issue commitments to insure title and thereafter policies of title insurance. The attorney, one Tom Turner, issued Safeco title policies in five transactions in which Caribank (hereafter the bank) provided real estate loans. On one of these loans Turner was a borrower in the name of a partnership involved in a real estate venture (Mallard loan). As part of the transaction, the partners assigned a second mortgage they held to one partner's relative, who was merely a strawman with no real interest. On the other loans, Turner served as attorney for the borrower (Ellis Neder) and as closing agent. Although they were not parties to these proceedings, the jury found that Turner and Neder had conspired to defraud the bank in connection with the subject loans. Appellant was found to be vicariously liable for Turner's misdeeds.
The bank's proof below indicated that Safeco designated Turner by written appointment to serve as a title insurance policy issuing agent. A copy of this letter of appointment was furnished to the bank. In pertinent part, the appointment letter stated: "Turner ... shall have authority on behalf of (Safeco) to sign, countersign and issue commitments... and title insurance policies on policy forms provided by Safeco." This letter of appointment was apparently the sole written evidence of the relationship between Safeco and Turner.
It is undisputed that Turner was representing either himself with regard to the Mallard loan or as counsel for Neder in all of the other transactions and that the bank issued written loan commitments to the borrowers in these deals before any request for title insurance was made. It is equally clear that in his capacity as agent for Safeco, Turner had actual authority only to sign and issue commitments and title insurance for Safeco and that the bank was provided with written documentation representing Turner's limited appointment as title insurance agent for Safeco.
Apparently, the bank's theory of Safeco's responsibility for the fraud and therefore the liability for the bank's losses was based largely on the following rules of agency:
A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.
A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him is not relieved from liability by the fact that the servant or other agent acts entirely for his own purposes, unless the other has notice of this.
Restatement (Second) of Agency §§ 261, 262 (1958).
As the above sections of the Restatement illustrate, the liability of a principal for the acts of its agent is not limited to what is expressly authorized. A principal also may be responsible for the acts of its agent if these acts lie within the apparent authority of the agent, unless the circumstances are such as to put one on inquiry.[1]Stiles v. *975 Gordon Land Co., 44 So.2d 417, 421 (Fla. 1950).
By apparent authority is meant, such authority as the principal wrongfully permits the agent to assume or which the principal by his actions or words holds the agent out as possessing. Apparent authority rests on the doctrine of estoppel and arises from the fact of representations or actions by the principal and a change of position by a third party who in good faith relies on such representations or actions.
Id. at 421-22 (citations omitted)(emphasis added). In Fidelity & Cas. Co. v. D.N. Morrison Constr. Co., 116 Fla. 66, 156 So. 385, 387 (1934), appeal dismissed, 293 U.S. 534, 55 S.Ct. 348, 79 L.Ed. 642 (1935), the Florida Supreme Court stated that the principle of apparent authority embraces the following three elements: 1) a representation by the principal, 2) reliance on that representation by a third person, and 3) a change of position by the third person in reliance on the representation. Clearly, the reliance of a third party on the "apparent authority" of a principal's agent must be reasonable and rest in the actions of or appearances created by the principal, Rushing v. Garrett, 375 So.2d 903, 906 (Fla. 1st DCA 1979), and "not by agents who often ingeniously create an appearance of authority by their own acts." Taco Bell of California v. Zappone, 324 So.2d 121, 124 (Fla. 2d DCA 1975).
The jury in the case at bar found that Turner did not commit any wrongful act while serving as a closing agent but nonetheless held Safeco liable for Turner's actions based upon its finding that his actions in aid of the frauds were committed within his apparent authority as agent for Safeco. Applying the elements delineated above for determining whether an agent is acting within a principal's apparent authority reveals that the jury's verdict is without a basis in law. First, the determination of whether an agent acts within apparent authority requires, as previously noted, that the principal create the appearance of apparent authority. The record in the case at bar is wholly devoid of any evidence that Safeco took any action or made any representation that Turner had authority to act as Safeco's agent except within the confines of his actual authority to act as Safeco's title insurance issuing agent.
In Sommers v. Smith and Berman, P.A., 637 So.2d 60 (Fla. 4th DCA 1994), a lawyer representing the buyers in a real estate purchase acted as the closing agent and also issued a title insurance policy through Chicago Title Company. When the buyers subsequently discovered that the lot legally described was smaller than had been represented by the seller, they sued, among others, the lawyer and Chicago Title. Chicago Title's alleged liability was based on the lawyer's agency to issue title insurance for the company. The complaint did not allege a defect in title or that Chicago Title was the closing agent. The district court found there was no authority supporting the proposition that a title insurance company is liable under such circumstances and affirmed dismissal of the complaint with prejudice as to Chicago Title. See Resolution Trust Corp. v. American Title Ins. Co., 901 F.Supp. 1122 (M.D.La.1995); Bodell Constr. Co. v. Stewart Title Guar. Co., 945 P.2d 119 (Utah Ct.App.1997); Cameron County Sav. Ass'n v. Stewart Title Guar. Co., 819 S.W.2d 600, 604 (Tex.App.Corpus Christi 1991)(stating that although an attorney may wear "two hats," in selling title insurance and closing property sales, the title insurance company is not liable for attorney's mishandling of real estate closing). Here, the bank's claim regarding Safeco's liability ignores Turner's actions on his own behalf as a borrower and as Neder's counsel in the other transactions. Thus we find that the bank failed to present any evidence that Safeco made any representations of Turner's capacity as its agent outside the actual representation that Turner could issue title commitments and policies for Safeco.
Although the bank seemingly relied on Turner's representations with regard to the loans, these were not Safeco's representations concerning Turner's agency for Safeco. Rather, Turner made these representations in his capacity as counsel for Neder and for himself as a borrower. He did not hold these positions because he could issue title insurance for Safeco. The record reflects that the bank made the written loan commitments *976 prior to Turner's use of his Safeco agency to issue title commitments and policies. In addition, these Safeco documents correctly indicated each of the conveyances in the chain of title of the properties as structured by Turner, Neder, and the bank, and it is unquestioned that each transaction was valid. The bank thus could only rely on these documents for what they wereaccurate representations of the chain of title of the properties given as security for the loans. Despite these facts, the bank argued that Turner's capacity as title insurance agent for Safeco and Safeco's issuance of title insurance commitments and policies for the transactions caused the fraudulent events to occur. While it may be said that Turner certainly was wearing at least "two hats" with respect to these transactions, Safeco's accuracy in listing the conveyances in the title insurance commitments and policies was required and in no way caused the alleged frauds and subsequent losses by the bank.
As admitted by the bank, the fraud in the Neder transactions involved inflation of the value of the property through "land flipping," while the fraud in the Mallard loan concerned the partnership's transfer of a second mortgage held by that partnership to a partner's brother-in-law. Title insurance has nothing to do with the value of the property pledged as security for a loan, see Goode v. Federal Title and Ins. Corp., 162 So.2d 269, 270 (Fla. 2d DCA 1964), and there is no proof that Safeco either undertook or owed a duty to discover or disclose underlying facts about the value of the land or the family relationships of people involved in the subject real estate transactions. We do not have before us the question of Safeco's liability under the title policy, and, on this record, the bank's claims and the jury's finding of Safeco's liability are unwarranted as a matter of law.
In summary, Turner's actions with regard to the fraud on the bank were not committed while Turner acted within either the actual or apparent authority provided to him by Safeco and Safeco did not put Turner in a position that enabled him to commit the frauds with regard to the loans. Thus, it seems clear to us that this attempt on the part of the bank to reach into Safeco's "deep pockets" and recover its loan losses has no basis in law. For the reasons discussed herein, Safeco was entitled below to a directed verdict as a matter of law, and we reverse and remand to the trial court with instructions to enter such a verdict.
KAHN and WEBSTER, JJ., concur.
NOTES
[1] Although we do no base our decision on these occurrences, apparently the bank, upon discovering the fraud alleged in its complaint, extended the due dates of some of the subject loans and actually committed more money to some of them.