324 So.2d 121 (1975)
TACO BELL OF CALIFORNIA, a California Corporation Duly Authorized to Transact Business in Florida, Appellant,
v.
Ralph ZAPPONE, Appellee.
Nos. 74-765, 75-665.
District Court of Appeal of Florida, Second District.
December 17, 1975.
Rehearing Denied January 20, 1976.
*122 W. Daniel Stephens, Roger W. Sims, and Bruce Stone, Holland & Knight, Tampa, for appellant.
A.J. Barranco, Jr. and Harold Bluestein, of Barranco, Darlson & Daniel, Miami, for appellee.
SCHEB, Judge.
The plaintiff/appellee recovered $108,318.25 as a result of a jury verdict rendered in a suit for misrepresentation by defendant/appellant concerning a restaurant franchise. We reverse.
The operative facts are these: Appellant Taco Bell of California (Taco Bell) is a California corporation which operates retail food outlets in Florida and other states. Appellee Ralph Zappone operated a restaurant in California which was netting him about one thousand dollars per month. Interested in associating with a company that would allow him to operate more than one restaurant, Zappone contacted Taco Bell in early 1968 to inquire about franchises. After initial review of the Taco Bell literature, Zappone telephoned and in May 1968, Taco Bell put him in touch with William Radford, a franchise salesman for Taco Bell, at its corporate headquarters in the Los Angeles, California, area.
On or about June 11, 1968, Radford signed and presented to Zappone a document entitled, "Initial Deposit Receipt and Agreement to Pay." Radford signed on the line labeled "Representative for Taco Bell ..." There was a place for a further signature labeled "Home Office Approval by Taco Bell." The document included a statement that provided:
"This agreement will not be binding upon Taco Bell until it is executed by a corporate officer at the home office of the company at Torrence, California. .."
Zappone never signed this document; however, after several subsequent meetings with Radford, arrangements were made for him to operate the Taco Bell Restaurant in Lakeland where the franchisee was terminating his association.
According to Zappone, during the course of negotiations the following representations were made to him by Radford:
(1) That the Lakeland Taco Bell had a volume of $8,000 per month in sales,
(2) That the operator would receive $1,600 per month, and
(3) If appellant moved to Lakeland and took over the operation there, he could become the exclusive franchise operator in the Orlando, Florida *123 area for at least two Taco Bell Restaurants.
Zappone severed his business ties in California and moved his family to Lakeland where in July 1968, he began operating the restaurant. According to his testimony he soon discovered that the sales volume and his proceeds were far less than had been represented. He later discovered that there was already a Taco Bell in the Orlando area, and the company had no intention of opening other restaurants there. Zappone contended that assurance of the Orlando franchise had been a prime inducement for his move to Florida.
On October 8, 1968, after Zappone had operated the business for some two and one-half months, an agent for Taco Bell delivered a license agreement and sublease agreement to him. The license agreement included a disclaimer by Taco Bell as to any representations of results or profits which may be derived from the business. Although he testified he had not previously reviewed these documents, he signed them all and continued to operate the business until November 25, 1968, at which time he left with outstanding obligations to Taco Bell totaling $1,682.75.
At trial Zappone testified that he suffered economic losses as well as considerable mental distress as a result of his move from California. The jury returned a verdict in favor of Zappone and against Taco Bell for $41,250, as compensatory damages, and $68,750, punitive damages. A judgment of $1,682.75 was awarded Taco Bell on its counterclaim. Upon denial of Taco Bell's motion for a new trial and a remittitur, a net judgment of $108,318.25 in favor of Zappone was entered by the trial court. Taco Bell appeals.
We perceive the controlling question in this appeal to be:
Whether the trial court erred in instructing the jury that the acts of Radford were the acts of Taco Bell, thereby determining as a matter of law that Radford was in all instances acting within the scope of his authority as an agent of Taco Bell.
We hold it did and reverse.
It is undisputed that Radford was a franchise salesman and thereby an agent for Taco Bell. In an action for misrepresentation, a principal is liable for the fraud of his agent while acting in the scope of his authority, and this principle of law is fully applicable to corporations. Wheeler v. Baars, 1894, 33 Fla. 696, 15 So. 584; 37 Am.Jur.2d, Fraud and Deceit, § 321. But, to bind his principal, an agent's actions must be within the scope of his express or implied, i.e., his "actual or real" authority, or be of such a nature as third parties would be entitled to rely upon as being within his "apparent" authority. This issue of apparent authority often presents a mixed question of law and fact, Watkins v. Sims, 1921, 81 Fla. 730, 88 So. 764, and is one which should be submitted to the jury under appropriate instructions. Parsons v. Federal Realty Corp., 1931, 105 Fla. 105, 143 So. 912; J.A. Cantor & Associates, Inc. v. Devore, Fla.App.3d 1973, 281 So.2d 245.
There was no evidence that Radford had actual authority to make the representations in question. Taco Bell's chairman of the board and its vice president both testified that they were never informed of the representations attributed to Radford by Zappone. Significantly, the testimony elicited from the officers of Taco Bell did not elaborate the scope of Radford's authority beyond describing him as a "franchise salesman." Any liability of Taco Bell must therefore be based upon Radford's apparent authority.
Apparent or ostensible authority arises where a principal allows or causes others to believe the agent possesses such authority, as where the principal knowingly permits the agent to assume such authority or where the principal by his actions or words holds the agent out as possessing *124 it. Tampa Sand and Material Company v. Davis, Fla.App.2d 1960, 125 So.2d 126. The doctrine rests on the premises that one who allows another to serve as his agent must bear the loss which results to a third party from that party's dealings in reliance on that agent's supposed authority. But as Mechem points out, the doctrine rests on appearances created by the principal and not by agents who often ingeniously create an appearance of authority by their own acts. Mechem on Agency, 4th Ed. 1952, § 94.
Here there was evidence of obvious misrepresentations made to Zappone, and the jury so found in its affirmative responses to a series of nine interrogatories posed by the trial judge. Specifically, the jury found that Taco Bell knowingly and maliciously made false representations of material facts and opinions to induce Zappone to rely upon them, and that Zappone was justified in reliance upon such misrepresentations. From the evidence presented, the jury could have so concluded if it determined all of the representations made by Radford were within his authority as Taco Bell's agent. But, the jury was deprived of considering the extent to which Radford's acts were indeed the acts of Taco Bell since the trial judge instructed the jury, in part, as follows:
The court has determined and instructs you as a matter of law that William Radford was an agent of the defendant, Taco Bell, and as such, his acts were the acts of the defendant, Taco Bell, and by giving you that instruction as a matter of law, I am removing from your consideration any question  you will accept the fact that Radford was the agent and acted for the defendant. (Emphasis supplied)
If the actions of Radford were not within the scope of his actual or apparent authority, and not specifically authorized or ratified by Taco Bell, then there would be no liability to Taco Bell as a principal. Kennedy and Cohen, Inc. v. Allen Appliance Service, Inc., Fla.App.3d 1968, 214 So.2d 488. And where, as here, the evidence showed that Radford was an agent with certain actual authority, but the scope of his apparent authority was in dispute, it was critical for the triers of fact to have the opportunity to make its own finding on this point. The exculpatory language in the "Initial Deposit Receipt and Agreement to Pay" signed by Radford and exhibited to, but not signed, by Zappone clearly was evidence tending to negate Radford's apparent authority to promise an exclusive franchise in the Orlando area. This document could have, and arguably should have, suggested to Zappone that only a corporate officer could make such a representation binding on Taco Bell.
Under the circumstances, we hold that the trial judge's instruction to the extent it concluded that the acts of Radford were acts of Taco Bell was erroneous and prejudicial to Taco Bell.
Reversed and remanded for new trial consistent with this opinion.
McNULTY, C.J., and BOARDMAN, J., concur.