354 So.2d 1259 (1978)
OWEN INDUSTRIES, INC. and Ultraguard Corporation, Appellants,
v.
Joseph E. TAYLOR, Appellee.
No. 77-1046.
District Court of Appeal of Florida, Second District.
February 10, 1978.
*1260 Christy F. Harris and William M. Midyette, III, Lakeland, for appellants.
Philip O. Allen of DeVane & Allen, Lakeland, for appellee.
SCHEB, Acting Chief Judge.
Owen Industries and Ultraguard Corporation challenge a final judgment holding them liable for a breach by Lakeland Security Systems (LSS) of a contract between LSS and appellee Taylor. In awarding appellee Taylor a judgment for $1,518.28, the trial court apparently concluded that certain allegedly false representations made to Taylor by LSS were authorized by appellants.[1] Appellants contend LSS was without authority to make any representations on their behalf, hence they argue there was no legal basis for the judgment. We agree with appellants and reverse.
During 1974 David Bast and James Stevens formed Lakeland Security Systems for the purpose of selling and installing fire and burglar alarm systems in the Lakeland area. LSS purchased much of its inventory from David Cannon, a wholesale distributor for appellants in Tampa.
In December 1974 LSS hired appellee Taylor to sell and install its systems. Shortly thereafter Bast and Stevens suggested to Taylor that he could operate an extension office of LSS in Jacksonville and sell and install appellants' products in that area. They presented him with a Company-Dealer Expansion Agreement, consisting of two separate parts: Part 1, Management-Trainee Provision; and, Part 2, Purchase-Option Plan. Under Part 1, Taylor was to pay LSS $5,000 to be used to open and maintain the Jacksonville office. Taylor was to operate that office on a commission basis during a "training" period of two-to-six months. At the end of the training period Taylor was to have the option of entering into Part 2, whereby he could purchase the Jacksonville office for an additional $5,000. The agreement presented to Taylor was not furnished by appellants, nor did appellants participate in its preparation or execution.
On January 27, 1975, Taylor signed Part 1 of the agreement, paid LSS $5,000, and *1261 began management of the Jacksonville office. On March 10 he notified LSS that he was abandoning that office because of LSS's failure to provide the necessary operating capital and cooperation, and because he felt certain of its business practices were unethical.
In June 1975 Taylor sued both LSS and appellants for return of the $5,000 he had paid under Part 1, the Management-Trainee Provision; he later settled with LSS for $3,000, and dismissed it from the suit.
In July 1976 Taylor filed an amended complaint against appellants only. Taylor alleged that LSS had represented to him that it had the authority from appellants to grant him the right to distribute their products in the Jacksonville area. He further alleged that appellants knew of these representations, and also knew that they were false; that appellants made no effort to inform him that the statements were untrue, or to prevent LSS from making such statements. Finally, Taylor alleged that he had complied with all the conditions of Part 1 of the agreement, and that appellants were therefore liable for LSS's breach of the agreement. At the conclusion of a non-jury trial, the court entered final judgment holding appellants liable for the breach of contract by LSS. The trial court found that LSS was an "agent" of appellants, and appellants thereby became liable for LSS's actions. Damages were assessed at $1,518.28, representing Taylor's $5,000 investment less the settlement and other sums he received from LSS. This appeal ensued.
Appellee Taylor did not suggest to the trial court that LSS had actual authority to act for appellants. Rather, he took the position that LSS had "apparent" authority; i.e., the authority a principal knowingly tolerates or allows an agent to assume, or which the principal by his actions or words holds the agent out as possessing. Stiles v. Gordon Land Co., 44 So.2d 417, 421 (Fla. 1950); 1 Fla.Jur. Agency, Section 34 (1955).
Appellants, on the other hand, argue on this appeal that there was no evidence before the trial court demonstrating that they made any representations, or conducted themselves in any way that would have led Taylor to believe Bast and Stevens had the power to act or speak on their behalf.
Taylor relies upon two events which he contends were sufficient to establish that appellants knew of the representations made to him by Bast and Stevens. Taylor first calls attention to a telephone conversation he had with Mr. McNeil, president of appellant Ultraguard, shortly before the Management-Trainee Provision was signed. The purpose of that call, Taylor said, was to make sure that Bast and Stevens "were on the up and up." Taylor testified that McNeil told him "that they [Bast and Stevens] worked for David Cannon in Tampa, and that if I had any question about Ultraguard Corporation or any of the systems that I should talk to them."[2] Shortly after the telephone conversation, Taylor attended a sales seminar in Tampa. Bast and Stevens were also there, as was McNeil. Taylor testified that at the seminar Bast and Stevens mentioned in the presence of McNeil that LSS intended to open a Jacksonville extension office. The inference, of course, was that the Jacksonville office would sell appellants' products.
The evidence before the trial court did not comport with the well established principle of agency law that the statements or acts of an alleged agent cannot bind the principal unless there is evidence showing the principle authorized, assented to, or had knowledge of the acts or statements of the supposed agent. Paige-Detroit Motor Car Co. v. Pintado, 82 Fla. 210, 89 So. 549 (1921); 1 Fla.Jur. Agency, Section 9 (1955). See generally Taco Bell v. Zappone, 324 So.2d 121 (Fla. 2d DCA 1975). In the telephone conversation Taylor never mentioned anything to McNeil about the proposed contract. *1262 Nor was the contract mentioned at the sales seminar. And while there was testimony that Best and Stevens told Taylor they had paid a substantial fee to appellants to sell appellants' products in Jacksonville, there was no evidence that Taylor ever mentioned this to appellants. Finally, there was no evidence that Taylor ever told McNeil or any other officer of appellants of any representations made to him by Bast and Stevens concerning appellants' products.
Taylor's case relies on his claim of the apparent authority of Bast and Stevens to act as agents for appellants. This doctrine "rests on appearances created by the principal and not agents who often ingeniously create an appearance of authority by their own acts." Taco Bell v. Zappone, supra, at 124. Here the evidence did not show that appellants had authorized, assented to, or had knowledge of the representations made by Bast and Stevens. So there was no legal basis upon which to hold appellants liable for breach of contract by LSS. Therefore, Taylor's judgment against appellants cannot stand.
Reversed and remanded to the trial court with directions to vacate the judgment against appellants.
OTT and RYDER, JJ., concur.
NOTES
[1] At the time the contract was entered into, Ultraguard was a division of Owen. However, after the contract, but before suit, Ultraguard became a separate corporation.
[2] It is unclear as to just who "them" is. It might refer to Bast, Stevens, and Cannon, or possibly just to Bast and Stevens.