409 So.2d 172 (1982)
Betty BENSON, Appellant,
v.
William E. SEESTROM, Appellee.
No. 81-295.
District Court of Appeal of Florida, Second District.
January 29, 1982.
Roger A. Larson of Graham, Hodge & Larson, Belleair Bluffs, for appellant.
Warren J. Knaust of McCaughey, Knaust & Evans, St. Petersburg, for appellee.
SCHEB, Chief Judge.
Appellant Betty Benson challenges a judgment for damages awarded Appellee William Seestrom for her breach of a contract to sell him a condominium.
On April 17, 1979, Douglas Culpon, appellee's real estate broker, delivered appellee's signed offer to purchase appellant's condominium to Skip Paschall, appellant's real estate agent. It was April 24 before Paschall mailed the contract to his principal, appellant. Upon receipt on April 25, appellant made several changes on the contract. She increased the amount of the down payment, expressly required a cash transaction, modified the brokerage commission, and changed the expiration date for her acceptance of appellee's offer from April 20 to May 1, 1979. Appellant then hand-delivered the contract to Paschall's office on April 27.
Paschall failed to notify Culpon that the amended contract was in his office until May 3, two days after the new expiration date appellant inserted in the contract. Once notified, Culpon immediately picked up the contract. On the same date he mailed it to appellee who resided in Minnesota. Upon receipt of the amended contract, appellee executed it and promptly *173 returned it along with the additional deposit. In the interim, however, by a letter dated May 4, appellant, not having received an acceptance prior to May 1, advised Paschall that the contract was void and withdrew the listing from his office.
Subsequently, appellant, who is a registered real estate broker, sold the condominium to a third party. Although the purchase price she realized was less than the contract price agreed upon by the parties in this case, she made a profit because she incurred lower selling expenses. In a non-jury trial the court found in favor of appellee and awarded him a judgment for $1,546, plus interest and costs. This appeal ensued.
We find only one point raised by appellant has merit. Appellant urges that basic contract law applies here, and that her counteroffer lapsed on May 1, the revised expiration date she inserted in the contract. Appellee, on the other hand, argues that the law of agency controls. He maintains there is substantial, competent evidence to support the trial court's finding that appellant breached her contract and to sustain the court's award of damages. We agree with appellee.
As noted, the first offer was delivered to Paschall's office on April 17. This contract had a termination date of April 20; however, Paschall did not deliver it to his principal, appellant, until well after the termination date. When she received this contractual offer, appellant treated it as effective, made certain changes, inserted a new termination date, and delivered the amended contract back to her agent. Again, Paschall failed to notify the buyer's agent of this counteroffer until well after the new termination date. When appellee was informed of the counteroffer, he promptly executed the contract and remitted the additional down payment. He then actively sought to obtain financing for the closing of his purchase of the condominium on the assumption he had entered into a binding contract. It is undisputed that Appellee Seestrom and Culpon, his agent, acted expeditiously throughout the negotiations. Thus, the trial court properly determined that all of the delays which resulted were attributable to Paschall, appellant's agent.
Appellant contends that Paschall, as her real estate agent, had no actual or apparent authority to continue her counteroffer beyond May 1 and bind her to the contract. The cases relied upon by appellant, however, involve situations where the agent entered into a contract on behalf of his principal, not merely where he negotiated an extended date for a contract, the basic terms of which his principal had already agreed to accept.
A principal is responsible for the acts of his agent. Even where an agent's act is unauthorized, the principal is liable if the agent had the apparent authority to do the act and that apparent authority was reasonably relied upon by the third party dealing with the agent. Stiles v. Gordon Land Co., 44 So.2d 417 (Fla. 1950); Parsley Brothers Construction Co. v. Humphrey, 136 So.2d 257 (Fla.2d DCA 1962). Apparent authority must be the result of acts or omissions by the principal in order to subject the principal to liability for the agent's actions. Taco Bell of California v. Zappone, 324 So.2d 121 (Fla.2d DCA 1976); Tampa Sand & Material Co. v. Davis, 125 So.2d 126 (Fla.2d DCA 1960).
In the present case the negotiations between the parties were conducted totally by their respective agents. While Paschall was not cloaked with authority to execute contracts on appellant's behalf, he certainly had the apparent authority necessary to conduct negotiations between the parties. Real estate contract negotiations frequently involve brief extensions, particularly where a party resides out of state. None of the facts or circumstances of the transaction put appellee on notice that Paschall did not have the authority to submit the amended contract after the revised expiration date. Therefore, when he delivered the amended contract at a date beyond the expiration date noted therein, appellee and his agent Culpon acted reasonably in assuming that the requirements of meeting that date had been waived.
*174 We think it significant that during the contract negotiations appellant received the first contract after the termination date expressly provided therein. Still she treated it as effective. When she changed the termination date, she never notified Paschall that time was of the essence. Moreover, appellee had no notice of the new termination date until receipt of the amended contract subsequent to that date. Upon being notified appellee and his agent acted with deliberate speed, and thereafter proceeded in good faith in reliance on the contract.
Accordingly, we conclude that there was sufficient evidence for the trial judge to determine that Paschall had apparent authority to communicate appellant's counteroffer after the termination date, and that appellee's prompt acceptance of the counteroffer was valid. We are aided by the trial judge's thoughtful and correct analysis of the law in the judgment he entered. His factual findings are sustained by substantial, competent evidence. It is, therefore, our duty to affirm the judgment of the trial court. Helman v. Seaboard Coast Line Railroad Co., 349 So.2d 1187 (Fla. 1977).
AFFIRMED.
DANAHY, J., concurs.
SCHOONOVER, J., dissents with opinion.
SCHOONOVER, Judge, Dissenting.
I respectfully dissent.
Initially, it must be explained that appellee's agent merely picked up the written counteroffer at Paschall's office and delivered it to the appellee. No conversation accompanied this notification of a counteroffer to sell. Thus, the terms and conditions of the counteroffer were totally contained within the document itself. It was clearly indicated on the face of the counteroffer that it had lapsed before appellee received it. Where an offer is withdrawn before its terms are communicated to the offeree, there can be no effectual acceptance of it. Morgan v. Patillo, 24 F.2d 204 (5th Cir.1928); Frissell v. Nichols, 94 Fla. 403, 114 So. 431 (1927). Simply stated, the counteroffer had lapsed.
In all fairness to the appellee, it must be noted that the action of Paschall in allowing appellee to be notified of a counteroffer when that counteroffer is no longer in effect is confusing and contradictory. When one delivers an offer after the expiration date noted on its face, it is usually reasonable to assume that the requirements of that clause have been waived and that, instead, acceptance need only be communicated within a reasonable time. This was apparently the assumption of the appellee  one to which the trial court gave great deference.
Had the appellant herself delivered the counteroffer to the appellee, there would be less doubt as to the trial court's decision that it was proper for appellee to assume that the clause was a nullity (even without inquiring). However, this was simply not the case. It is clear from the record that the appellant did not intend the counteroffer to be subject to acceptance for a reasonable time. More importantly, it is clear that Paschall had no apparent authority to extend the expiration date.
If liability is to be founded on the basis of the doctrine of apparent authority or agency by estoppel, it is a prerequisite that the principal do something that induces reasonable reliance on his agent's acts. Fidelity Casualty Co. v. D.N. Morrison Construction Co., 116 Fla. 66, 156 So. 385 (1934), appeal dismissed, 293 U.S. 534, 55 S.Ct. 348, 79 L.Ed. 642. The appellant did nothing to create an appearance that the counteroffer could merely be responded to in a reasonable time after notification. In fact, she made a substantial effort to negate this assumption.
The written indication as to the life span of the counteroffer placed a duty upon the appellee to inquire as to the scope of actual authority vested by the appellant in Paschall. As this court held in Taco Bell of California v. Zappone, 324 So.2d 121 (Fla.2d DCA 1975):
The doctrine [of apparent authority] rests on the premises that one who allows another *175 to serve as his agent must bear the loss which results to a third party from that party's dealings in reliance on that agent's supposed authority. But as Mechem points out, the doctrine rests on appearances created by the principal and not by agents who often ingeniously create an appearance of authority by their own acts. Mechem on Agency, 4th Ed. 1952, § 94.
Id. at 124. A related premise is voiced at 3 Am.Jur.2d, Agency, § 78 (1962), wherein it is stated:
A third person dealing with a known agent may not act negligently with regard to the extent of the agent's authority or blindly trust the agent's statements in such respect. Rather, he must use reasonable diligence and prudence to ascertain whether the agent is acting and dealing with him within the scope of his powers.
Furthermore, it is well settled that the doctrine of apparent authority will not be used to enforce verbal agreements made by agents beyond the scope of their authority where the complaining party has signed a written agreement which negates or contradicts the oral agreement and the apparent authority of the agent. Taco Bell of California v. Zappone; Brown v. Inter-Ocean Insurance Co., 438 F. Supp. 951 (N.D.Ga. 1977).
It is of material concern that a simple phone call to the appellant could have resolved any questions as to the actual scope of the counteroffer. Appellee should have made such an inquiry. He did not. Accordingly, he should accept the consequences of his own inaction.