**O & S CATTLE COMPANY, Petitioner,**

v.

**U.S. DEPARTMENT OF AGRICULTURE, Respondent.**

**No. 89-2595.**

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1990.

Decided Sept. 6, 1990.

---

Richard A. Koehler, Geneva, Neb., for petitioner.

Jeffrey A. Knishkowy, Washington, D.C., for respondent.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HEANEY, Senior Circuit Judge.

O & S Cattle Company (O & S) was found to have violated the Packers and Stockyards Act, 7 U.S.C. §§ 181–229, by not paying for cattle ordered by a former employee, Jim Olesen. O & S's defense was that Olesen did not purchase the cattle for it, nor did he have the authority to do so. O & S appeals, arguing that there is not substantial evidence in the record to support the Secretary of Agriculture's decision. We agree and reverse the Secretary's decision.

## I.

O & S is a large cattle dealer located in St. Paul, Minnesota, which specializes in reselling cattle to slaughter houses. It employed Jay Lundt as a buyer in South Dakota and Minnesota. Lundt recommended Olesen as a buyer to O & S. O & S employed Olesen to purchase cattle at livestock markets, including the Norfolk Livestock Market in Nebraska, from 1983 through 1985. Olesen received all his instructions from Lundt and was paid on commission by O & S. Olesen signed a buyer's disclosure form at the Norfolk market in 1985 listing O & S as his employer. Although Olesen purchased cattle for others at Norfolk, he did not list any other businesses as employers. O & S was never notified by Norfolk in 1985 that Norfolk required disclosure forms or of the contents of the disclosure form signed by Olesen. From this point on, Norfolk automatically recorded all of Olesen's purchases as purchases by O & S.[1]

In September 1985, O & S instructed Olesen to stop buying for it at Norfolk. In May of 1986, O & S decided to terminate its relationship with Olesen and Lundt entirely. On May 9, O & S mailed, by regular mail, a letter terminating Olesen and Lundt to cattle markets, including Norfolk, and the Packing and Stockyards Administration. Norfolk denies receiving this letter, although every other dealer to which it was sent and the Packing and Stockyards Administration acknowledge receiving it.

This dispute concerns purchases of cattle made by Olesen on May 9, May 23, and June 6, 1986 at the Norfolk market. Norfolk claims that O & S is responsible for the unpaid purchases:

---

1. O & S notified dealers by letter on January 3, 1986 that Lundt and Olesen were authorized to purchase on its behalf, but required dealers to call O & S's toll-free number for purchase verifications on the day of the sale or the following morning. This letter was not sent to Norfolk.

| Date | Price | Payment By |
|------|-------|-----------|
| May 9 | $69,967.19 | Lundt Trucking, check bounced |
| | $ 6,250.89 | Vienna Sausage |
| | $20,364.48 | Pine Valley Meats |
| May 23 | $49,378.95 | Lundt Trucking, check bounced |
| | $36,464.45 | Pine Valley Meats |
| June 6 | $56,258.52 | No payments |
| | $24,847.35 | Pine Valley Meats |
| | $ 4,179.35 | Vienna Sausage |

The purchases made by Olesen for Pine Valley Meats and Vienna Sausage were paid for by those companies directly to Norfolk, and there is no evidence that O & S acted as an intermediary on these sales. For the remainder of the purchases, Norfolk proceeded against Lundt to collect the money. On June 24, Norfolk received a bill of sale from Lundt for cattle Lundt owned in Texas. Norfolk claimed a remaining $152,737.36 loss from these sales, and tried to collect the money from O & S. O & S refused and Norfolk filed a complaint with the Department of Agriculture, which held a hearing.

The Judicial Officer agreed that the disputed purchases had been made by Olesen solely for Lundt and that the cattle had gone to Lundt's personal feed lots. Decision and Order at 9 (Sept. 22, 1989). He reasoned, however, that O & S had held Olesen out as its agent and was required to provide actual notice to Norfolk of Olesen's termination. *Id.* at 6. The Judicial Officer credited Norfolk's testimony that Norfolk did not receive the termination letter, *id.* at 9, perhaps because using certified mail is a better practice to avoid such disputes, and held O & S liable for all the unpaid purchases. *Id.*

## II.

We must consider whether there is substantial evidence to support the agency decision. *Western States Cattle Co. v. Department of Agric.*, 880 F.2d 88, 89 (8th Cir.1989). Olesen lacked the actual authority to make purchases at Norfolk on O & S's behalf after September of 1985. Previously, he placed orders only per O & S's instructions. Thus, the sole issue in this case is Olesen's apparent authority: was it reasonable for Norfolk to assume that all of Olesen's orders were placed for O & S?

■ We disagree with the Judicial Officer's assumption that O & S cloaked Olesen with apparent authority as its general agent such that Norfolk could reasonably assume that all of Olesen's purchases were made on O & S's behalf. Apparent authority requires that the principal manifest to the third party that another is his agent. Restatement (Second) of Agency § 8 (1958). Under the Restatement, an agent cannot create his own apparent authority by signing a disclosure form listing a principal without the principal's knowledge or acquiescence. *See id.*, § 27 (conduct of principal must create reasonable belief regarding agent's authority). In addition, while O & S held Olesen out as an agent at other markets, *see supra* note 1, there was no evidence that Norfolk was generally aware of Olesen's activities at other markets.

■ Thus, the sole manifestation of O & S's assent to Olesen's purchasing at Norfolk was the payment by O & S for forty-six percent of Olesen's orders at Norfolk until September 1985. *See* Hearing Exhibits 2–3, Petitioner's Addendum (computer printout of all purchases charged against O & S's order number at Norfolk from December 28, 1984 through June 20, 1986). From May through September of 1985, only twenty-nine percent of Olesen's orders at Norfolk were paid for by O & S. During the same time period, Pine Valley Meats paid for forty-nine percent of Olesen's orders. After O & S terminated Olesen's purchasing for it at Norfolk in September 1985, Norfolk recorded 102 additional purchases against O & S's account without O

& S's or Olesen's knowledge. Three were paid for by O & S, including a sale of a single cow. There was no evidence that Olesen placed these three orders.

That O & S sometimes paid for Olesen's purchases is not sufficient by itself to create Olesen's apparent authority to act as O & S's general agent. As the operator of the Norfolk market testified, it is common practice for ultimate purchasers to pay for cattle bought by an intermediary. Hearing tr. at 150. This is how Norfolk explains why the payment for orders by other entities, such as Pine Valley Meats, did not shake their belief that O & S was Olesen's employer. Thus, O & S's payments for many of Olesen's orders could have simply indicated that O & S was the ultimate purchaser from Olesen. In believing that Olesen was O & S's agent, Norfolk really relied on Olesen's disclosure form. This reliance was misplaced. The disclosure statement was no more than a unilateral declaration on Olesen's part, and Norfolk never verified its contents. Norfolk's operator testified that the disclosure forms were new and experimental at the time, and admitted that anyone could fill out a disclosure form listing any employer, that copies of the disclosure forms were not sent to the listed parties, and that Norfolk never verified their contents. Hearing tr. at 193–95. Had Norfolk verified the disclosure form's contents, Norfolk may well have been instructed to verify each day's purchases with O & S per O & S's practice, *see supra* note 1, hearing tr. at 329, and this dispute would never have arisen.

Our conclusion that Norfolk could not reasonably believe that Olesen was at all times acting as O & S's general agent is buttressed by the evidence that, except for its computer records, Norfolk treated Lundt as the ultimate purchaser. Norfolk admitted that when Lundt's checks bounced, Norfolk did not initially contact O & S. Hearing tr. at 182, 185. In late June, Norfolk called O & S to see if O & S knew where to find Lundt, but did not ask O & S for payment at that time. *Id.* at 299, 372. Moreover, Norfolk never billed O & S for the disputed transactions. *Id.* at 185. We

conclude that Norfolk knew that Olesen acted on behalf of several parties.

### III.

For the reasons stated, the judgment of the Secretary of Agriculture is reversed.