PER CURIAM.
This is the appeal of a final judgment arising out of a dispute over payments due under a computer equipment lease. Appel-lee, Gale Group, Inc., d/b/a Weathashade Corp. (“Gale”) was the lessee. The original lessor was Commercial Equipment Leasing Corporation (“CELC”), a closely held corporation whose sole shareholder was Ronald Famiamo. CELC was an independent lease broker in the business of arranging equipment financing. Typically, such a broker places the financing of leases with any of several third party lenders. In essence, the lender purchases the stream of payments due under the lease at a discount from the sum of monthly payments over time. The broker’s profit comes from the difference between the value of the assignment to the lender and the purchase price of the equipment.
Appellant, Deutsche Credit Corporation (“Deutsche”) was the lender in this case. Although Deutsche’s primary source of business was its own sales force, it also purchased equipment leases from independent lease brokers, including, for a given period of time, CELC. Under such lease financing arrangement, CELC was the assignor and Deutsche was the assignee of the equipment lease.
In 1987, Gale and CELC were put in contact with one another by a computer equipment dealer to arrange financing for purchase of the equipment. CELC offered the proposed transaction to Deutsche. Deutsche found the proposal acceptable and supplied the document forms. The lease, entitled “Deutsche Credit Equipment Lease” contained a detailed assignment clause and a notice of assignment of the lease to Deutsche. This assignment provides that, unless otherwise directed in writing by Deutsche, all payments due un *471 der the lease were to be made directly to Deutsche. The lease further provided:
After such assignment, Lessor shall not be assignee’s agent for any purpose. Lessee will settle all claims arising out of alleged breach of warranties or otherwise, defenses, set-offs and counterclaims it may have against Lessor directly with Lessor, and not set up any such against Lessor’s assignee, Lessor hereby agreeing to remain responsible therefor. Lessee on receiving notice of any such assignment shall abide thereby and make payment as may therein be directed.
From the inception of the lease, Deutsche sent monthly invoices to Gale and Gale remitted payment to Deutsche. This transaction proceeded without controversy for almost two years.
In the spring of 1989, Gale decided to upgrade its computer system. CELC was again contacted to obtain financing for the new equipment. It was decided that the new system would be financed through IBM Credit Corporation. IBM agreed to roll the amount of the old lease into the new lease and sent Gale the funds to pay off the Deutsche lease.
Upon receipt of the funds, the new treasurer for Gale, who had been with the company only a few weeks, was instructed by his supervisor, Mr. Phillipson, to contact CELC to get a figure for the pay off of the Deutsche lease.[1] He did so, speaking with Ron Famiamo. He also asked Famiamo to verify the pay off in writing. Famiamo sent the requested letter verifying the pay off amount; however, in that letter, he also instructed Gale to pay CELC, explaining:
We will process the paperwork through Deutsche Credit and return the original lease document stamped paid in full to you. We will also include a bill of sale passing to you. Title of the equipment is currently held in our name with a security interest held by Deutsche Credit.
Gale did as instructed and paid the sum of $56,315.98 to CELC without reference to the lease or the prior history of payments to Deutsche.
Upon receipt of Gale’s payment, CELC did not forward the money to Deutsche or inform Deutsche of the pay off. Instead, CELC deposited the funds in its bank account and, for the next six months, timely sent monthly lease payments in the form of cashiers checks to Deutsche’s lock box. Not aware that Gale had paid CELC, Deutsche continued to send monthly invoices to Gale which Gale simply marked “do not pay” and retained.
In January, 1990, CELC stopped forwarding monthly payments to Deutsche. Deutsche then contacted Gale about the default and the parties discovered CELC’s scheme. Deutsche demanded payment from Gale under the lease but Gale refused to make any further payment to Deutsche, taking the position that CELC and Famia-mo were either the actual or apparent agent of Deutsche, and that, upon delivering payment to CELC, Gale had discharged its lease obligations to Deutsche.
These agency issues were the subject of the jury trial. Deutsche complains that the court should have directed a verdict in its favor on these two defenses. It also complains of the jury instructions and certain evidence that was admitted. Because we agree that the court should have directed a verdict for Deutsche on Gale’s agency defenses, we will not discuss the latter two points on' appeal except to say that we also agree with appellant that the jury instructions given on the agency issues were erroneous and incomplete.
I. Actual Agency.
Gale’s contention that CELC was the actual agent of Deutsche, authorized to *472 collect payments under this lease has no legal basis. It appears to be predicated largely on evidence of Deutsche’s “control” over CELC’s participation in the lease transaction. This “extensive control” testimony simply boils down to the fact that the transaction had to be to Deutsche’s liking before it was willing to do the deal. Without question Deutsche “controlled” the terms and conditions of any transaction it entered into; however, there is no evidence in this record that Deutsche exercised any control whatsoever over the means or method by which CELC conducted its business. See Butterworth v. Integrated Resources Equity Corp., 680 F.Supp. 784, 789 (E.D.Va.1988); Broock v. Nutri/System, Inc., 654 F.Supp. 7, 9 (S.D.Ohio 1986). The evidence that Deutsche investigated the brokers with whom it dealt and would not do business with those that did not meet its standards adds nothing to appellee’s claim. Also, the record reflects that, for some time prior to the problems that arose in this case, Deutsche had become increasingly aware of financial and other problems with CELC, including disputes over monies owed by CELC to Deutsche and approximately two months before the problem that arose in this case, Deutsche had severed its relationship with CELC.
Apart from the fact that no actual agency existed between Deutsche and CELC, this absence of agency was expressly stated and acknowledged in the equipment lease executed by CELC and by Gale. See Cronin v. Washington Nat’l. Insurance Co., 6 Fed.L.Weekly C1445, 1446 (11th Cir. Jan. 14, 1993). We reject appel-lee’s contention that the payment instruction and agency disclaimer in the lease are irrelevant because this case involves an early “pay off” of the lease, not monthly payments under the lease. Appellee contends that the lease requirement that “all payments” be made to Deutsche does not apply to a “pay off” because that is a “separate transaction falling outside the lease.” We are satisfied that the contractual language “all payments under this Equipment Lease” includes any payments, periodic or lump sum, that satisfy the lease obligation in whole or in part. For both reasons, when CELC asked for and received payment from Gale, it was not doing so as an actual agent of Deutsche. See Lakeside Press & Photo-Engraving Co. v. Campbell, 39 Fla. 523, 22 So. 878 (1897).
II. Apparent Agency.
Appellee’s second line of defense was that CELC was the “apparent agent” of Deutsche for collection of payments due under the lease. If a principal holds someone out to the public as being possessed of the requisite agency authority and a third person is aware of this authority and relies on it to his detriment, the principal is es-topped to deny the agency. Sapp v. City of Tallahassee, 348 So.2d 363, 367 (Fla. 1st DCA 1977); see also, Cronin, 6 Fed.L.Weekly at 1446.
Appellee’s contention at trial and on appeal concerning apparent agency is grounded principally on the notion that, by giving the pay off number to CELC so that CELC could communicate with Gale about the pay off, Deutsche provided CELC with the indicia of its authority to collect payment. There are at least two problems with this contention. First of all, the testimony was undisputed that when CELC contacted Deutsche Bank to obtain the payoff, the Deutsche employee who received the request, following company policy, contacted Gale to obtain Gale’s permission to give the information to CELC. Had CELC been Deutsche’s agent for purposes of collecting the pay off, no such permission would have been necessary or appropriate. Also, we reject the notion that knowledge of the amount of a debt implies the right to collect it. The record shows clearly that CELC had reasons for having the information other than collection of the amount owed, and Gale knew Deutsche had disclaimed any agency. See In re Branding Iron Motel, Inc., 798 F.2d 396 (10th Cir.1986).
Appellee’s second contention is that the testimony of Gale employee, Don *473 na Galante,[2] supports the inference that at one point, Deutsche had told Phillipson that Gale had to contact CELC to obtain a pay off amount. Whether such testimony would support that inference is questionable. See Voelker v. Combined Ins. Co. of America, 73 So.2d 403 (Fla.1954). It does not support the conclusion, however, that Deutsche had cloaked CELC with authority to collect payment. See Sirmons v. Pittman 138 So.2d 765, 770 (Fla. 1st DCA 1962). More significant is the fact that apparent agency only applies in situations where there is reliance on the agency representation that results in a change of position. In this case, the testimony is unrefut-ed that the decision made by Gale’s vice president/treasurer to pay CELC was not based on anything Deutsche had done but was based solely on CELC’s instruction. Apparent authority rests only on appearances created by a principal, not those created by agents who are often ingenious in creating an appearance of authority. Owen Industries, Inc. v. Taylor, 354 So.2d 1259, 1262 (Fla. 2d DCA 1978).
The only other evidence adduced by Gale at trial in support of their agency claim is the testimony of Famiamo that on a few other occasions he had acted on behalf of Deutsche Credit to recover equipment under defaulted leases and had collected payments due. Appellee is coy about whether this testimony is offered in support of actual or apparent agency; however, it plainly does not support an apparent agency because there is no suggestion in this record that Deutsche manifested to Gale in any way that CELC was its agent for collection in any other transaction or that Gale had any knowledge of or relied on these other transactions. The question is whether the authority actually conferred on CELC as testified to by Famiamo could be construed to include the right to collect payment, in its own name, of the pay off due under the Gale lease. We cannot agree that by permitting, even employing, Famiamo to assist in collection efforts on other defaulted leases, Deutsche established an actual agency for Famiamo to collect full payment on this lease. See O & S Cattle Co. v. U.S. Dep’t. of Agriculture, 913 F.2d 527, 529 (8th Cir.1990). Given CELC’s status at the time of these events and Famiamo’s testimony, there is no factual basis for a jury to find that Famiamo reasonably inferred that Deutsche desired him to collect the Gale lease pay off. See Restatement (Second) of Agency § 33-34.
Because there is no substantial competent evidence that would support a verdict for appellee on its defenses of either actual or apparent agency, we remand the cause to the trial court with instructions to enter judgment for appellant on its claim for the balance due under its lease.
REVERSED and REMANDED.
COBB and GRIFFIN, JJ., concur.
COWART, J., dissents without opinion.

. Another Gale employee testified that Mr. Phil-lipson telephoned Deutsche Credit and asked about the settlement value of the lease; he then said in her presence that he had to call CELC. She overheard him do so and ask to speak to an individual. He then called Deutsche, advised that the person he wanted was no longer there and asked for help. He then said, "I have a name.” He made another call and said, “They’re going to call me back with a pay off figure.” Phillipson gave her a pay off figure the next day. She had no further involvement. Phillipson had no recollection concerning these calls. Appellee asserts this testimony explains Gale’s conduct in remitting the pay off to Fam-iamo instead of Deutsche.

. See note 1, supra.